IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE: CATHY DAVENPORT, DEBTOR      CASE NO.: 4:10-bk-17315
     CHAPTER 13

OTTER CREEK HOMEOWNERS' ASSOCIATION      PLAINTIFF

V.      AP NO.: 4:15-ap-01013

CATHY DAVENPORT      DEFENDANT

## MEMORANDUM OPINION

Otter Creek Homeowners' Association ("Otter Creek") filed a *Complaint to Determine Dischargeability of Debt and Declaratory Relief* ("Complaint") seeking to determine if postpetition homeowners' association fees and assessments owed by the Chapter 13 debtor, Cathy Davenport ("debtor"), are dischargeable. Both Otter Creek and the debtor appeared through counsel at trial on June 25, 2015; thereafter, the court took this matter under advisement. For the reasons stated herein, the relief requested in the Complaint is granted, and the debtor's postpetition homeowners' association fees and assessment are nondischargeable.

### I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (I). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### II. Findings of Fact

The parties did not present any testimony at trial; the evidence consisted solely of stipulated facts and exhibits. In 2009, the debtor purchased "real property located at 14 Conners Court in Little Rock, Arkansas 72210 (the "Property") by warranty deed." (Joint Tr. Stip. at ¶ 1.)

The Warranty Deed provides that the transfer is "[s]ubject to existing assessments, building lines, easements, mineral reservations and/or conveyances, and restrictions, of record, if any." (Joint Ex. 1.)

The "[d]ebtor filed her petition under Chapter 13 of the Bankruptcy Code on October 6, 2010," and she "has not made any payments to [Otter Creek] since filing her petition." (Joint Tr. Stip. at ¶ 2.) The outstanding balance, as of June 16, 2015, is $9596.82. (Joint Ex. 2.) Included in that balance are two prepetition assessments: a $265 balance forward as of September 27, 2010, and an assessment of $41 dated September 30, 2010. (Joint Ex. 2.) A statement introduced into the record reflects a routine $41 monthly charge with additional unexplained and unspecified assessments. (Joint Ex. 2.) Late charges are also included. (Joint Ex. 2.)

The debtor filed a modified plan on April 15, 2011, which provided for Otter Creek's prepetition secured claim of $306.00. (Joint Ex. 4.) The court entered an *Order Confirming Chapter 13 Plan as Modified on 04/15/2011* on May 18, 2011. (Joint Ex. 5.) The "[d]ebtor filed [another] modified plan on August 26, 2011, indicating her intention to surrender the Property, but to date and to the best of [the] [d]ebtor's knowledge, [she] remains the record owner of the Property." (Joint Tr. Stip. at ¶ 5.) The court confirmed the August 26, 2011 modification on September 19, 2011. (Joint Ex. 7.)

On October 2, 2012, the debtor filed a *Motion to Abandon Real Property*. (Joint Ex. 8.) Pursuant to the court's *Order Granting Motion to Abandon Real Property in Part, and Denying in Part*, entered on December 12, 2012, the debtor's request "to abandon the [P]roperty as to the [d]ebtor as a person" and "to shift liability for the homeowners' association fees and assessments to her mortgage company" was denied. (Joint Tr. Stip. at ¶ 6.)

2

The parties also stipulated that "[a]t all times pertinent to this lawsuit, the [Otter Creek] Declaration ("Declaration") was filed as a public record at Book 1323, Page 1 of the Deeds and Records of Pulaski County, Arkansas." (Joint Tr. Stip. at ¶ 7.) The Declaration is dated October 24, 1974, and was recorded in January 1975. (Joint Ex. 10.)

"Pursuant to the Declaration of Otter Creek, record ownership of the Property constitutes membership in [Otter Creek]." (Joint Tr. Stip. at ¶ 8.) Some of the obligations of Otter Creek membership include "pay[ing] general annual assessments, [ ] special assessment[s] for capital improvements, late fees, and collection costs, as established by the Association Board of Directors." (Joint Tr. Stip. at ¶ 9.) This obligation is personal to the debtor as an owner, which is defined in the Declaration. (Joint Ex. 10, at 5–6.) Further, "[t]he personal obligation for delinquent assessments shall not pass to [the owner's] successors in title unless expressly assumed by them." (Joint Ex. 10, at 6.) Delinquent assessments become a lien on the owner's property and are amenable to personal liability and foreclosure. (Joint Ex. 10, at 8.) Specifically, the Declaration provides:

> NOW, THEREFORE, Declarant hereby declares that all of that real property described above shall be held, sold and conveyed subject to the following easements, restrictions, covenants, conditions, reservations, liens and charges. The easements, restrictions, conditions, and charges are for the purpose of enhancing and protecting the value, desirability and attractiveness of said real property. These easements, covenants, restrictions, conditions and charges shall run with said real property and shall be binding on all parties having or acquiring any right, title or interest in said real property, or any part thereof, and shall inure to the benefits of each owner thereof.

(Joint Ex. 10, at 4.) Additionally, the debtor in her closing argument acknowledged that the postpetition debt in this instance ran with the land.

### III. Discussion

The United States Bankruptcy Code appears to directly address the issue presently before the court—whether the debtor's postpetition homeowners' association fees and assessments are dischargeable. Subsection 523(a)(16) provides:

> (a) a [d]ischarge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case[.]

11 U.S.C. § 523(a)(16) (2015). Notably absent from the predicate language of this subsection is subsection 1328(a), the more general, non-hardship discharge conferred on debtors who have successfully completed a Chapter 13 plan. The discharge in this instance also has limitations.

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> > (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]

11 U.S.C. § 1328(a)(2) (2015).

The absence of any reference to subsection 523(a)(16) in subsection 1328(a) forms the entirety of the debtor's defense in this proceeding. Specifically, the debtor contends that the Code's failure to include subsection 523(a)(16) in the specifically enumerated list of section 523 exceptions results in the discharge of her postpetition homeowners' association fees.

4

Simply because subsection 523(a)(16) is not specifically included in subsection 1328(a) does not automatically mean that other provisions of the Code do not apply in the context of a typical Chapter 13 bankruptcy. In these circumstances, the alternative and dispositive interplay between subsection 1328(a) and section 1305, concerning postpetition debts, applies. As this court stated in *Laymon*,

> Section 1328(a) of the bankruptcy code addresses the dischargeability of claims in a chapter 13 case and states that, "the court shall grant the debtor a discharge of all debts provided for by the plan." Therefore, [the creditor's] post-petition claim must be "provided for" by the plan in order to be discharged.
>
> In relation to a post-petition claim, a debtor may "provide for the payment of all or any part of any claim *allowed* under section 1305" in the chapter 13 plan. 11 U.S.C. § 1322(b)(6) (emphasis added). In order to be "allowed," a creditor must first file a proof of claim. Section 1305 addresses the allowance and filing of post-petition claims. Under § 1305, "[a] proof of claim *may be filed by any entity that holds a claim* against the debtor . . . that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan." 11 U.S.C. § 1305(a)(2) (emphasis added). Therefore, only the holder of a § 1305 claim may file a proof of claim for a post-petition debt. *In re Benson*, 116 B.R. 606, 607 (Bankr. S.D. Ohio 1990). The debtor may not involuntarily "provide for" a debt that is not the subject of a properly filed and allowed post-petition proof of claim.
>
> . . . . Section 1305(a)(2) of the code does not require that post-petition creditors file a claim, and the debtor cannot force the creditor's participation through postconfirmation modifications. *In re Woods*, 316 B.R. 522, 524–25 (Bankr. N.D. Ill. 2004) (stating "courts have uniformly interpreted § 1305 to give these postpetition creditors the option of having their claims pass though the bankruptcy without discharge simply by not filing the proof of claim that the section authorizes"); *Sims*, 288 B.R. at 268.

*Centurytel of Nw. Ark., LLC v. Laymon* (*In re Laymon*), 360 B.R. 902, 904 (Bankr. E.D. Ark. 2007).

Accordingly, without Otter Creek's voluntary participation in the debtor's bankruptcy case and plan by filing a proof of claim for its postpetition debt, the predicate requirement extant in subsection 1328(a)—that the discharge is for all debts "provided for by the plan"—is not met.

5

This analysis and resolution, however, is not fully complete. The court must now address whether the homeowners' association fees and assessments accrued pre- or postpetition. Courts have analyzed this issue in the context of Chapter 7 and Chapter 13 cases. In *Affeldt*, the Eighth Circuit Court of Appeals considered this issue on facts that predated the 1994 addition of subsection 523(a)(16) and concluded:

> [T]he determinative issue is whether the condominium assessments accrued before or after the commencement of the Affeldts' [Chapter 7] bankruptcy petition. If the condominium assessments accrued prepetition, they are discharged; if they accrued postpetition, they are not discharged.

*Affeldt v. Westbrooke Condo. Assoc.* (*In re Affeldt*), 60 F.3d 1292, 1295 (8th Cir. 1995).

The court went on to discuss the recognized split of authority between the Fourth Circuit and Seventh Circuit Courts of Appeals—the *Rosenfeld* and *Rosteck* cases, respectively.[1] In short, the *Rosenfeld* line of cases stands for the proposition that "[s]ince the condominium declaration is a covenant running with the land, . . . the condominium assessments do not accrue until they are assessed. Consequently, any postpetition assessments cannot be discharged by a bankruptcy court."[2] *Affeldt*, 60 F.3d at 1295. The *Rosteck* line of cases "holds that the debtor's

---

[1] Both *Rosenfeld* and *Rosteck* involved Chapter 7 debtors.

[2] In *Rosenfeld* the court found:

> The Declaration expressly states that it is a covenant running with the land and binds and inures to the benefit of all present and future owners. The Act requires that the Declaration be executed and recorded in the same manner as a deed. Va.Code Ann. § 55–438 (Michie 1986). Rosenfeld never signed the Declaration itself, but his proprietary lease expressly provides that it is subject to the Declaration.
>
> Under the Declaration, the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, Rosenfeld's obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation. *In re Raymond*, 129 B.R. at 364. The post-petition assessments were for the upkeep of common areas and other common expenses during Rosenfeld's post-petition ownership. River

liability for the assessments is dischargeable, arising from a prepetition contractual obligation." *Id.*; *see, e.g.*, *Old Willow Condo. Assoc. v. Rosteck* (*In re Rosteck*), 899 F.2d 694 (7th Cir. 1990). Thus, the Eighth Circuit Court of Appeals concluded that "the determinative factor in determining which line of cases to follow is whether the condominium declaration and corresponding documents are simply a contract or constitute a covenant running with the land."[3] *Affeldt*, 60 F.3d at 1296.

In *Rosteck*, the Seventh Circuit Court of Appeals placed a great deal of emphasis on the idea of a fresh start and the comprehensive definition of a "claim" under the Code in determining that the ongoing obligation was a contingent debt from a prepetition contract and, accordingly, dischargeable. 899 F.2d at 696–97. While that treatment may be appropriate in a Chapter 7 context where the debtor has abandoned the premises and a full discharge is obtained, it leaves unresolved the circumstance where a Chapter 7 debtor remains on the premises and continues to accrue postpetition homeowners' association fees. Further, *Rosteck* was decided in 1990, prior to the inclusion of subsection 523(a)(16) that expressly made postpetition homeowners' association fees nondischargeable in a Chapter 7 where the debtor retained possession or an ownership interest in the premises. The complementary application of section 1305 and subsection 1328(a) achieve the same result in a Chapter 13 context. However, courts have struggled with these issues in the context of Chapter 13 cases.

---

> Place's right to payment for post-petition assessments did not arise pre-petition and was not extinguished by Rosenfeld's bankruptcy discharge.

*River Place East Housing Corp. v. Rosenfeld* (*In re Rosenfeld*), 23 F.3d 833, 837 (4th Cir. 1994).

[3] The court declined to adopt or apply either line as the parties failed to introduce the condominium declaration at issue.

7

In *Foster*, a Chapter 13 debtor argued that postpetition homeowners' association fees were dischargeable based on a *Rosteck* analysis and, as in the present case, that the exception to discharge expressed in subsection 523(a)(16) is inapplicable under subsection 1328(a). *Foster v. Double R Ranch Assoc.* (*In re Foster*), 435 B.R. 650, 657 (B.A.P. 9th Cir. 2010). The creditor argued *Rosenfeld*. *Id.* The court concurred with the concessions of both parties that "§ 523(a)(16) is inapplicable to the discharge under § 1328(a)." *Id.* at 657–58. Then, the court analyzed whether the homeowners' association fees were covenants that ran with the land and were unaffected by the debtor's discharge or were dischargeable as a contractual obligation arising from prepetition debt. *Id.* at 660. The United States Bankruptcy Appellate Panel of the Ninth Circuit applied *Rosenfeld* and concluded that the debt "was a function of owning the land with which the covenant runs and not from a prepetition contractual obligation." *Id.* Implicit in this ruling is the underlying premise that postpetition debts are not discharged. *Id.* at 661. *Contra In re Coonfield*, 517 B.R. 239, 242 (Bankr. E.D. Wash. 2014).

In *Coonfield*, the court discharged postpetition homeowners' association fees in a Chapter 13 after finding that the claim arose prepetition. *Id.* at 243. The court, however, noted that its finding would be different if the debtors continued to occupy the premises. *Id.* at 243 n. 12.

> Simply because the obligations at issue are dischargeable under section 1328(a), does not lead to debtors receiving a free ride if they continue to benefit from the property. Personal liability for ongoing assessments may arise on theories of unjust enrichment, quantum meruit, or implied contract. Further, this court's holding leaves property interests intact. The Homeowners Association and Bank of America may pursue their *in rem* state law remedies.

*Id.* (citations omitted).

These cases reflect the difficulty courts encounter when analyzing this specific factual scenario, especially given the broad definition of a "claim" under the Code. A perhaps simpler path is the recognition that the discharge provided for in subsection 1328(a) only applies to debts

8

that are "provided for by the plan," which excludes postpetition claims under section 1305 for which no proof of claim has been filed. If that premises is acceptable, then the *Rosenfeld* and *Rosteck* analyses suggest that the appropriate resulting determination is whether the homeowners' association fees are prepetition (dischargeable) or postpetition (nondischargeable) debts.

In the case presently before this court, the debtor in her closing argument acknowledged that her postpetition debt ran with the land. The Declaration is rather specific in that regard.

> NOW, THEREFORE, Declarant hereby declares that all of that real property described above shall be held, sold and conveyed subject to the following easements, restrictions, covenants, conditions, reservations, liens and charges. The easements, restrictions, conditions, and charges are for the purpose of enhancing and protecting the value, desirability and attractiveness of said real property. These easements, covenants, restrictions, conditions and charges shall run with said real property and shall be binding on all parties having or acquiring any right, title or interest in said real property, or any part thereof, and shall inure to the benefits of each owner thereof.

(Joint Ex. 10, at 4.)

Accordingly, the application of the *Rosenfeld* case is appropriate and obligates the debtor.

## IV. Conclusion

The debtor clearly does not wish to retain ownership or possession of the Property. She is, unfortunately, still the record owner. The ongoing homeowners' association fees and assessments run with the land and are, under a *Rosenfeld* analysis, postpetition debts for which no proof of claim has been filed. Thus, applying section 1305, the postpetition homeowners' association fees and assessments represent debts that have not been provided for under the plan and, accordingly, are nondischargeable under subsection 1328(a).

IT IS SO ORDERED.

    Dated this 21st day of July, 2015.

_____

HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc:    Cathy Davenport
       Seth R. Jewell
       Robert R. Danecki
       Joshua T. Ogle
       Mark T. McCarty